UNITED STATES DISTRICT COURT
THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Michael MARGOLIS, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>U-HAUL International, Inc.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 1:07-cv-01648 (R.C.)<br>)<br>)<br>)<br>)<br>) |

DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS
MOTION TO STRIKE CLASS ALLEGATIONS
AND TO DISMISS THE COMPLAINT

**Introduction**

Defendant U-Haul International, Inc. ("UHI") respectfully submits this memorandum in reply to Plaintiff's Memorandum in Opposition to Defendant's Motion to Strike Class Allegations and to Dismiss the Complaint ("Opposition").

The Opposition reiterates Plaintiff's litany of complaints – allegedly UHI provided him a rental vehicle from an inconvenient location, the rental vehicle malfunctioned, UHI did not compensate him for his lost time as a result of that malfunction, UHI did not compensate him for out-of-pocket expenses as a result of that malfunction, and UHI overcharged him.

According to the Complaint, a contract exists which presumably addresses the parties' agreements concerning each of these complaints (e.g., the location the vehicle was to be picked-up, the condition of the vehicle to be rented, the payment owed by the

Plaintiff for rental, applicable late fees, and the allocation of risk between the parties for any resulting malfunctions).

For whatever reason, plaintiff has chosen not to rely on that contract. Instead, Plaintiff claims that all of his alleged harms – from malfunction, to inconvenient pick-up location – flow from a single five-word telephone book advertisement that reads: "Newest trucks for household movers!" He seeks damages and injunctive relief not only for himself but, apparently, "on behalf of the public . . . to recover monies unjustly obtained by U-Haul" from other individuals. [Opposition at 6] Finally, he believes that he should be able to pursue this representative action outside of the class action context. [Opposition at 6] Although he claims to proceed "in a representative capacity for similarly situated purchasers" in his Complaint, his Opposition states that "this is not a class action" and he wishfully cites the Consumer Protection Procedures Act ("CPPA") as his authority for bringing a representative suit without complying with the safeguards and protections established for class litigation.

Plaintiff's theories are fundamentally flawed. First, nothing within the CPPA provides for non-class-action representative capacity suits. Second, with regard to Plaintiff's personal claims, Plaintiff lacks standing to bring suit under the CPPA as he was not deceived by the bullet-point advertising and, as a result, the advertisement could have caused him no harm. Third, all of Plaintiff's cases emphasize that the bullet-point in the telephone book advertisement "Newest trucks for household movers!" is puffery, not the type of factual, quantifiable, advertising actionable under the CPPA. Finally, although Plaintiff may elect not to proceed to recover damages under his contract, he may

not invoke the quasi-contract theory of unjust enrichment when an actual contract exists. In sum, the motion as presented should be granted.

**Argument**

I.   **PLAINTIFF MAY NOT BRING A "REPRESENTATIVE ACTION" WITHOUT COMPLYING WITH THE RULE 23 SAFEGUARDS.**

The Federal Rules of Civil Procedure (the "Rules") apply "in all suits of a civil nature." Fed. R. Civ. P. 1. The Rules include a single procedural mechanism – Rule 23 – for suits in which "[o]ne or more members of a class" brings suit "as [a] representative part[y] on behalf of" other members of a class. Rule 23(a). Rule 23 includes necessary "procedures and safeguards designed to ensure fair and adequate protection of the interests of absentee class members" and to "protect defendants from repeated and potentially inconsistent adjudications." 5 Moore's Federal Practice § 23.02 (3d ed. 2007); see generally United States Parole Comm. v. Geraghty, 445 U.S. 388 (1980) (explaining development of Rule 23).

Plaintiff contends that he should be allowed to bring a representative suit "on behalf of the public," including "all other customers who rented vehicles from Defendant in the District of Columbia," to "recover monies unjustly obtained by U-Haul" *without* complying with Rule 23's class action requirements. [Opposition at 6; Complaint, para. 2] Plaintiff cites only the text of the CPPA which "allows recovery 'in representative actions'" as authority that he should be exempted from compliance with the procedural

safeguards applied by the Federal Rules to representative capacity suits. [Opposition at 7][1]

The referenced text of the CPPA was added on October 19, 2000 by the D.C. Council.  D.C. Code § 28-3905(K)(1)(E) (2007); D.C. Law 13-172  (Oct. 19, 2000).  Nothing within the 2000 amendment indicates that the D.C. Council intended to disrupt the *procedural* framework (either in federal or superior court) for pursuing representative actions.  Indeed, Plaintiff admits "the CPPA does not impose any procedural requirements."  [Opposition at 7]  Rather, the purpose of the October 19, 2000 amendment is best understood when the CPPA is compared to other state consumer protection statutes, and historical trends in consumer-based litigation.

Some state consumer protection statutes expressly prohibit "representative capacity" suits.  See, e.g., Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. 51:1409(A) (2007).  Courts have made clear that such language is intended to "expressly prohibit[] a private class action."  See Morris v. Sears, Roebuck & Co., 765 So. 2d 419, 421 (La. Ct. App. 2000) (citation omitted).  The ability to bring class action suits also has come under fire in states where statutes do not prohibit

---

[1]   Plaintiff characterizes the CPPA as containing a "private attorney general provision" and characterizes himself as a "private-attorney-general."  [Opposition at 1, 7, 8]  The term "private-attorney-general" is not contained in the CPPA.  Rather, the term has been used broadly to refer to instances in which legislation grants individuals causes of action for damages to encourage civil litigation as a supplement to Government enforcement in areas traditionally under the exclusive purview of the states' attorneys general.  See, e.g., Rotella v. Wood, 528 U.S. 549, 557 (2000) (noting that civil RICO supplements government enforcement by turning victims into "private attorneys general.") (citations omitted); Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 263 (1975) (referring to damages provision of the antitrust laws and Civil Rights Act as examples of the "private-attorney-general" concept). Plaintiff has provided *no authority* to support his claim that, as a private-attorney-general, he may pursue violations involving individuals other than himself.

"representative capacity" suits, but also do not expressly permit them. For instance, defendants argued, with mixed success, that the Tennessee Consumer Protection Act prohibited class actions by not expressly allowing representative suits. See, e.g., In re Bridgestone/Firestone Inc. ATX ATX II & Wilderness Tires Prods. Liab. Litig., 155 F. Supp. 2d 1069, 1106 (2001), rev'd at 288 F.3d 1012 (7th Cir. 2002) (overturning lower court holding that Tennessee Consumer Protection Act did not permit class actions). The D.C. Council decided to pre-empt judicial challenges to class actions under the CPPA by affirmatively stating that "representative actions" are allowed under the statutory framework. The procedure to be followed, of course, is a function of the particular rules of court.

Plaintiff asserts, without explanation, that application of Rule 23 "would frustrate the substantive enforcement provisions of the CPPA" under the doctrine espoused in Erie R.R. v. Tompkins, 204 U.S. 64 (1938). [Opposition at 7] Plaintiff ignores the fact that this Court, and the District of Columbia Court of Appeals, have successfully applied the requirements of Rule 23 (and its equivalent under the District of Columbia Rules) when adjudicating representative actions brought under the CPPA. See, e.g., Williams v. Purdue Pharma Co., 297 F. Supp. 2d 171 (D.D.C. 2003); Ford v. Chartone, Inc., 908 A.2d 72 (D.C. 2006) (considering class certification for suit under CPPA); District Cablevision Ltd. P'ship v. Bassin, 828 A.2d 714 (D.C. 2003) (adjudicating CPPA claims of class of cable television subscribers). Plaintiff points to no authority indicating that application of Rule 23 in these cases, or in this case, would frustrate a plaintiff's substantive right to pursue a representative action. Indeed, **Plaintiff fails to point to one example of a non-class representative action, of the type he proposes, that has been**

**brought under the CPPA.**  As another district court has recently held when examining the relationship between Rule 23, and the right to sue under a state consumer protection statute: "The substantive right is the right to sue.  The right to bring a class action [following the procedures of Rule 23], the statute of limitations, treble damages and venue are *all matters of procedure that do not implicate the basic right to sue but how you go about it."*  Thorogood v. Sears, Roebuck & Co., 2007 U.S. Dist. LEXIS 81035, at *7 (N.D. Ill. Nov. 1, 2007) (citation omitted).

    Indeed, were Plaintiff allowed to represent "all other customers who rented vehicles from Defendant in the District of Columbia" outside of the class action mechanism it would raise serious Constitutional due process concerns for absent parties.  For instance, Plaintiff proposes no non-Rule 23 mechanism for alerting absent parties of litigation that may affect absent-party rights, for allowing absent parties to reject Plaintiff's representation and proceed on their own behalf, or for ensuring that Plaintiff will be an adequate representative for the absent parties.  Furthermore, to the extent Plaintiff believes that he should be allowed to obtain injunctive relief on behalf of absent parties, Plaintiff proposes no non-Rule 23 mechanism for ensuring that any such relief fairly and accurately addresses the interests of absent parties; to the extent that Plaintiff believes that he should be allowed to obtain damages on behalf of absent parties, Plaintiff proposes no mechanism for allocating monetary damages to absent parties, or for ensuring that settlements made on behalf of absent parties are fair and sufficient. See

generally Hansberry v. Lee, 311 U.S. 32 (1940) (discussing need for due process protections for absent parties). [2]

## II.  PLAINTIFF LACKS STANDING TO PURSUE A CPPA CLAIM.

According to the Plaintiff, "[i]t is not required that the Plaintiff actually be deceived by the misrepresentation in question" in order to have standing under the CPPA. [Opposition at 14]  The sole case cited to support this assertion is Wells v. Allstate Ins. Co., 210 F.R.D. 1 (D.D.C. 2002).

Presumably Plaintiff relies on *dicta* in Wells that the October 2000 amendment to the CPPA may have eliminated the statute's "injury in fact and causation" requirements. Wells, 210 F.R.D. at 8.  Plaintiff ignores this Court's subsequent holdings that the 2000 amendment did not obviate *Constitutional* standing requirements:

> The amendment to the CPPA in 2000 did not change the requirements for standing under D.C. law, despite its broad language.  Congress did not establish this court under Article III of the Constitution, but we nonetheless apply in every case the constitutional requirement of a case or controversy and the prudential prerequisites of standing.

Williams, 297 F. Supp. 2d at 177 (internal quotations and citations omitted); see also Hoyte v. Yum! Brands, Inc., 489 F. Supp. 2d 24, 28 (D.D.C. 2007).  When applying Constitutional standing requirements to CPPA claims for "false and misleading advertising," this Court has specifically held that **a complaint fails when "it does not plead that [the plaintiff was] in any way deceived - or even saw - any of that advertising."** Williams, 297 F. Supp.2d at 177.

---

[2]  The prospect of a non-Rule 23 "representative action" also raises serious concerns that UHI might be subject to duplicative recovery, or inconsistent actions for injunctive relief.

By his own admission, Plaintiff here *was not deceived* as to the mileage of the truck, or the contractual terms that governed the rental. [See Motion at 9] Plaintiff states only that, unlike the plaintiffs in Williams, he can point to specific costs – e.g., payment for lodging as result of his truck's breakdown, reimbursement for the cost of renting his truck, etc – and thus has alleged injury for standing purposes. [Opposition at 15-16] Plaintiff cannot show that he incurred these costs as a result of being deceived, and pointing to damages that are not *caused* by the alleged misrepresentation fails to satisfy Constitutional standing analysis. Allen v. Wright, 468 U.S. 737, 751 (1984) (holding that plaintiff's alleged injury must be "fairly traceable to the defendant's allegedly unlawful conduct") (citation omitted); Albuquerque Indian Rights v. Lujan, 930 F.2d 49, 54 (D.D.C. 1991) (holding that constitutional standing requires a "direct causal connection between plaintiff's asserted injury and defendant's challenged action"). Simply put, as Plaintiff was not deceived by the contract or the advertising, any injury he suffered as a result of the bargain that he allegedly made with UHI cannot flow from the allegedly misleading advertising.

### III.  THE PUBLIC ADVERTISEMENTS ARE NON-ACTIONABLE PUFFERY.

Plaintiff points to four cases as indicating that representations as to a "product's age" are "quantifiable, factual representations" and not puffery. [Opposition at 12-13][3] A review of these cases emphasizes the *difference* between the alleged advertising and the type of specific and quantifiable representations that would constitute a violation of the CPPA.

---

[3]  Defendant notes that none of Plaintiff's cases was decided under the CPPA, or under the law of the District of Columbia.

Defendant's first case, Pennington v. Singleton, 606 S.W.2d 682 (Tex. 1980), involved representations concerning the quality and condition of a particular vehicle purchased by the plaintiff. Id. at 685. The seller represented that he had "$500 worth of work done" on a used boat to restore the boat to a condition described as being in "excellent condition," "perfect condition," and "just like new." Id. In fact, the motor of the boat was cracked and had been inadequately repaired. Id. The court reasoned that "[w]ords like 'excellent' and 'perfect' are words indicating a high degree of quality" and held that the defendant had violated the Texas Trade Practices Act by misrepresenting the actual quality of the boat. Id. at 687.

The alleged advertisement in this case provides a stark contrast to the representations made in Pennington. First, unlike the representations in Pennington, the alleged advertisement did not refer to a specific vehicle under discussion between the parties, but was rather a generic advertisement espousing the general virtue of U-Haul Co. of Washington D.C.'s vehicles. Second, unlike the statements in Pennington, the alleged advertisement did not include *any* representation as to the degree of the vehicles' quality (generally, or with regard to the specific vehicle involved).

The remainder of Defendant's cases involve misrepresentations as to specific quantities. In Hogan v. Mason Motor Co., 288 P. 200 (Or. 1930), the seller represented that a 1923 Durant sport touring car with 4,000 to 4,500 miles actually was a 1924 model with 256 miles. Id. at 201. In Fox v. Wilson, 507 P.2d 252 (Kan. 1973), the seller represented that a farm had generated 22,000 bales of hay the prior year when, in fact, the farm had generated 8,000 – 10,000 bales. Id. at 262. Finally, in Fox Industries, Inc. v.

Natoma Corp., 766 P.2d 1297 (Kan. Ct. App. 1988), the Defendant stated that the machine at issue was only one-year old when, in fact, it was much older.

Misrepresenting a specific item as being made in year X when in fact it was made in year Y; or misrepresenting a specific vehicle's mileage as being X when in fact it was Y, is precisely the type of quantifiable, factual misrepresentation actionable under the CPPA.  In sharp contrast, the alleged advertisement included no *quantifiable* representations, such as specific model years, or specific mileage, as to the average state of U-Haul Co. of Washington D.C.'s vehicles in general, or as to the specific vehicle rented by Plaintiff.  Indeed, the representation made in the alleged advertisement – "Newest trucks for household movers!" – lacked *any* quantifiable information, such as how many new trucks U-Haul Co. of Washington D.C. maintained, whether the trucks were "new" in terms of model year or whether they were "new" in terms of relative mileage or, if the former, the model year of the new trucks and, if the latter, the specific mileage of the trucks, etc.  In short, this teaser on a 3-inch-by-3 inch phone book advertisement is exactly the type of non-measurable qualitative assessment that constitutes puffery.

**IV.    THE COMPLAINT FAILS TO ALLEGE A CLAIM FOR UNJUST ENRICHMENT.**

Plaintiff proclaims that he is the "master of his Complaint" and can choose whether to bring a breach of contract claim "and/or a claim for unjust enrichment." [Opposition at 2][4]  Although Plaintiff controls the theories that he chooses to advance,

---

[4]    Interestingly, the case cited by Plaintiff, Rowan Heating-Air Conditioning-Sheet Metal, Inc. v. Williams, 580 A.2d 583, 584-86 (D.C. 1990), does not discuss a plaintiff's ability to proceed under a theory of unjust enrichment. [Opposition at 2]  The plaintiff in that case brought suit under the CPPA and contract.  580 A.2d at 584.  Defendant does

Defendant is entitled to dismissal when a theory chosen by the Plaintiff fails as a matter of law.  See Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).

As explained in greater depth in the Motion to Dismiss, a plaintiff may not recover under a theory of unjust enrichment where, as here, the parties have a contract governing their relationship.  1 Joseph M. Perillo, Corbin on Contracts § 1.20 (1993) (stating that "[w]here . . . there is an enforceable express or implied in fact contract that regulates the relations of the party or that part of their relations about which issues have arisen, there is no room for quasi contract").  As the Plaintiff admits that a contract exists between the parties, Plaintiff's unjust enrichment action should be dismissed.

Plaintiff asks this Court to overlook the existence of the contract by claiming that "misrepresentations and false advertisement prohibit [UHI] from trying to enforce a contract." [Opposition at 17]  The sole case cited by Plaintiff, Wells v. Allstate Insurance Co., 2006 U.S. Dist. LEXIS 4694 (D.D.C. Jan 24, 2006), provides Plaintiff with no support.  The Court in Wells considered whether an insurance company could use a waiver of liability to avoid suit under the CPPA.  Interpreting the liability waiver against the insurance company, the Court held that "the release does not fairly cover Wells's claims under the [CPPA]."  Id. at *11.  Nothing like that is alleged to be involved here.

**Relief Requested**

The Opposition emphasizes what nobody contests – Plaintiff is the "master of his Complaint" and can allege whatever theories he chooses.  Plaintiff's right to choose his theories in no way conflicts with Defendant's right to receive relief including the striking

---

not dispute Plaintiff's ability to allege a violation of the CPPA, and a breach of contract. Defendant disputes only Plaintiff's ability to pursue unjust enrichment, a quasi-contract theory, when Plaintiff acknowledges that a real contract exists between the parties.

of Plaintiff's class allegations, and the dismissal of Plaintiff's claims, as those theories fail to comply with procedural standards, and fail to state claims upon which relief can be granted.

For the reasons set forth in this Reply, and in the Defendant's Motion to Strike the Class Allegations and to Dismiss the Complaint, UHI respectfully asks the Court to strike the class allegations and to dismiss the Complaint.

                                        Respectfully submitted,

                                        **DEFENDANT,**
                                        U-HAUL INTERNATIONAL, INC.

                                        By_____/s/_____
                                           David Zetoony (D.C. Bar No. 486456)
                                           Bryan Cave LLP
                                           700 13th St. N.W. Ste 700
                                           Washington, D.C. 20005
                                           (202) 508-6030 (phone)
                                           (202) 220-7330 (fax)
                                           David.Zetoony@bryancave.com

Of Counsel:
Lawrence G. Scarborough, Esq.[*]
Bryan Cave LLP
Two North Central Avenue, Suite 2200
Phoenix, Arizona 85004
(602) 364-7137 (phone)
(602) 364-8137 (fax)
lgscarborough@bryancave.com

---

[*] Mr. Scarborough is not a member of this Court.